UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

RAFFI STEPANIAN

                       Plaintiff

        -against-

THE CITY OF NEW YORK ("THE CITY"),

NEW YORK CITY POLICE DEPARTMENT ("NYPD"),

NYPD SERGEANT LEE, SHIELD # 858,

NYPD OFFICER POO'LEARY SHIELD # 1282,

NYPD SITIRIO SHIELD # 3690,

individually and in their official capacities,
jointly and severally,
                     Defendants.
------------------------------------------------------------X



AMENDED COMPLAINT
AND JURY DEMAND

14-cv-5899 (JG) (SMG)

2015 FEB 16 PM 11:42 *FILED*

1.  Pro se Plaintiff, Raffi Stepanian, complaining of defendants, respectfully alleges as follows:

PRELIMINARY STATEMENT

2.  Plaintiff asserts the following claims against the defendants in the above-entitled action:

1. First Amendment
2. 42 USC §1983: False Arrest
3. Selective Enforcement
4. 42 U.S.C. §1986: Refusing/Neglecting To Prevent
4. 42 U.S.C. §§1985 (2) & (3): Conspiracy to Interfere with Civil Rights
5. Abuse of Process
6. Retaliatory Prosecution
7. Malicious Abuse of Process
8. Libel
9. Slander
10. Defamation of Character
11. Intentional Infliction of Emotional Distress
12. Negligent Infliction of Emotional Distress
13. 42 USC §1983: Failure to Properly Train
14. 42 USC §1983: Failure to Supervise
15. Violation of Civil Rights

3.  Plaintiff brings this action for compensatory damages, punitive damages and injunctive

and/or special relief, pursuant to 42 USC §1983, First Amendment, §§1985(2) & (3) and §1986 for violations of

civil rights, as said rights are secured by said statutes and the Constitutions of the United States.

4. Plaintiff brings this action for compensatory and punitive damages pursuant to New York Administrative Code § 16-122 Vehicles and other movable property -- §16-122 (a) Legislative Intent.

## JURISDICTION

5. This action is brought pursuant to 42 USC §1983, First Amendment, §§1985(2) and §1986 and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

6. Jurisdiction is founded upon 28 U.S.C. §1331, §1343 and,

7. Jurisdiction for the supplemental pendent New York State claims are founded upon 28 U.S.C. §1367 authorized by F.R.Civ.P. 18(a), and arises under the doctrine of pendent jurisdiction as set forth in United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

## VENUE

8. Venue is properly laid in the Eastern District of New York under 28 USC § 1391(b) which the claims arose.

## JURY DEMAND

9. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

10. The Plaintiff herein, Mr. Raffi Stepanian, is a citizen of the United States, and at all relevant times a resident of the City and State of New York. Mr. Raffi Stepanian resides at 15-01 144Th Street, Whitestone, New York, 11357.

11. The Defendant herein, NYPD Sergeant Lee, Shield # 858, is a duly appointed Officer of The New York City Police Department and a citizen of the United States, and at all relevant times a resident of the City and State of New York.

12. The Defendant herein, NYPD P.O. Poo'Leary Shield # 1282, is a duly appointed Officer of The New York City Police Department and a citizen of the United States, and at all relevant times a resident of the City and State of New York.

13. The Defendant herein, NYPD P.O. Sitirio Shield # 3690, is a duly appointed Officer of The New York City Police Department and a citizen of the United States, and at all relevant times a resident of the City and State of New York.

14. Defendant City of New York is a Municipal Corporation, organized under the laws of New York State. The City of New York is responsible for the unconstitutional customs, policies, procedures, and practices implemented through its various agencies, agents, departments, and employees, and for injuries occasioned thereby. The City of

New York is also the public employer of Defendants Sergeant Lee, Shield # 858, P.O. Poo'Leary Shield # 1282 and P.O. Sitirio Shield # 3690 at all times relevant to this Complaint.

15. Plaintiff brings this action for compensatory damages, punitive damages and injunctive and/or special relief, pursuant to 42 USC §1983, First Amendment, §§1985(2) & (3) and §1986 for violations of civil rights, as said rights are secured by said statutes and the Constitutions of the United States.

16. Defendants were each and all responsible, in whole and/or in part, for the planning and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

17. At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts and/or omissions.

18. Each Defendant is named and sued in his or her private, individual and/or official capacities.

19. Defendant THE CITY OF NEW YORK ("NYC") is a municipal entity created and authorized under the laws of the State of New York, with general offices located at City Hall, New York, New York 10007. New York City is authorized by law to maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement, and Plaintiff NYC is ultimately responsible for the NYPD and assumes the risks incidental to the maintenance of it and its employees.

20. At all times relevant herein, as set forth more fully below, defendant NYC had de facto policies, practices, customs and usages of failing properly to train, screen, supervise, and discipline agents, employees, and police officers, and of failing to inform the individual defendants and their supervisors of their need to train, screen, supervise or discipline said defendants, which were a direct and proximate cause of the unconstitutional conduct alleged herein and the damages attendant thereto.

21. At all times relevant herein, defendants were duly sworn police officers of the NYPD and were acting under the supervision of said department and according to their official duties.

22. At all times relevant herein, defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

23. Each and all of the acts of defendants alleged herein were done by said defendants while acting within the scope of and in furtherance of their employment by The CITY OF NEW YORK.

## VIDEO SUPPORTED FACTS

24. Please refer to the following unredacted YouTube videos, Parts 1, 2 and 3 to view the officers' acts in their entirety at the following YouTube Internet Web site addresses a)., b). and c)., below:

a). https://www.youtube.com/watch?v=frIY_RxtiUQ

b). https://www.youtube.com/watch?v=oI0WoDVL8O4

c). https://www.youtube.com/watch?v=lgp58dcluKE

25. At approximately 2:48 A.M. September 3, 2014 police officers Sergeant Lee, Shield # 858, Poo'Leary Shield # 1282 and Sitirio Shield # 3690 arrived to the Plaintiff's home location as he was evaluating the lock synchronization of his neighbor's car and conducted a "Terry Stop." "The Supreme Court has held that under the Fourth Amendment, it is constitutionally reasonable for the police to "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." This form of investigative detention is now known as a *Terry Stop*."

26. The Plaintiff's repairs to the car and presence about any aspect of the vehicle was in continuation since August 2, 2014 with the owners authorization, full trust and permission.

27. Ensuring that the car doors are locking correctly and securely was scheduled into the known repairs from the day of August 2, 2014. This is a known fact and the initial malfunction that was the precursor to multiple and continued repairs to the car, performed by the Plaintiff.

28. The Plaintiff's neighbor Mr. Constantine Pardalis, "Dino," owns the car and authorized plaintiff to perform repairs to his vehicle after the Plaintiff assisted him to power jump and manually unlock the doors with the key on August 2, 2014.

29. The door locks were not operating, because of a failed battery and Plaintiff assisted Dino to reenter his vehicle with the keys on August 2 through an alternate power feed supplied to the lock mechanism through the trunk.

30. Following various attempts to unlock the door with an "Emergency Unlocking Procedure" specific to BMW models the synchronization of the locks was affected and required resetting. This is a common procedure specific to BMWs.

31. The door locks were not properly reset following the emergency unlocking procedure and was left unsynchronized until the correct resetting procedure was retrieved. The passenger side was locking all the doors. This was an existing malfunction that Plaintiff knew of and was in the process of constant assessment.

32. Between August 2, 2014 and September 3, 2014 Plaintiff performed various repairs to the vehicle with Dino's authorization.

33. On September 2, 2014 Plaintiff assessed the radio wiring scheme to restore sound to the car speakers.

34. Following various maintenance checks and repairs to the vehicle Dino requested of Plaintiff to repair the Radio that was inoperable.

35. Plaintiff was working on the car radio throughout September 2 until approximately 2:43 A.M. September 3, 2014.

36. After some five hours of concurrent Internet research and troubleshooting the Plaintiff located the correct wiring diagrams and restored proper compatibility to the stereo wiring scheme and prepared the correct wiring layout in preparation for completion the following afternoon. (careful analysis of the video footage will demonstrate that the radio wires were neatly paired according to their color codes and fanned out in separation as preparation for easy completion the following afternoon).

37. Plaintiff exited the vehicle and locked the doors.

38. Plaintiff decided to go bike riding and scavenge garbage for an hour or so.

39. Plaintiff locked the vehicle doors, went into his house, and placed the car keys inside, placed his camera in his left hind pocket, put his bike riding gloves and back pack on, and removed his bicycle from the garage and proceeded riding away, until realizing that he forgot his pocket knife in the car.

40. Plaintiff returned back home, left the bike in front of the house and went inside to get the car keys.

41. Plaintiff then exited his house and left the entrance door open to bring the keys back inside after retrieving the pocket knife from the car.

42. Plaintiff retrieved the pocketknife from the car and locked the passenger side door with the passenger side key and was evaluating the door lock synchronization to ensure that the doors all locked synchronously from the passenger side. The driver's side was not synchronized.

43. While assessing the synchronization of the locks the Plaintiff noticed uniformed police officers in an unmarked car passing north bound on 144Th Street and proceed east onto 15Th Avenue.

44. Plaintiff stopped checking the door locks and immediately withdrew his camera from his left hind pocket and began filming the police. _See_ Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011) "A private citizen has the right to record video and audio of public officials in a public place ... "

45. The unmarked police unit paused, and then reversed to a full stop on the corner of 144Th Street and 15Th Avenue, approximately 43 feet away from the defendant.

46. At this point the Plaintiff was making certain that the camera is in clear focus of the officers. This moment can be seen in the beginning of the video as the film footage staggers, until the camera is stabilized in the following YouTube address: https://www.youtube.com/watch?v=frIY_RxtiUQ

47. The Plaintiff video recorded the officers' presence from their arrival until their departure.

48. The police officers arrived, conducted a "Terry Stop" and Sergeant Lee questioned the Plaintiff's activity on the car.

49. The Plaintiff informed the officers that he was getting his knife out of the car.

50. Seargent Lee asked Plaintiff why he was "playing with the lock."

51. Plaintiff informed Sergeant Lee because he was fixing the car.

52. Officer Poo'leary asked Plaintiff to put the pocketknife on top of the car.

53. Sergeant Lee stated that he just wanted to verify if it's the Plaintiff's car.

54. Plaintiff informed Sergeant Lee that it's Dino's car.

55. Sergeant Lee asked the Plaintiff to give him the car keys (two keys on the key ring).

56. And Sergeant Lee tried the wrong key in the door.

57. Plaintiff corrected Sergeant Lee and said it was the other key.

58. As Sergeant Lee tried the door he peered into the vehicle with his flashlight and speculated profane and non-factual allegations about the car's ignition, that placed the Plaintiff in duress.

59. The Car's ignition was fully intact.

60. Sergeant Lee then asked the plaintiff what he was doing with his camera.

61. Plaintiff informed Sergeant Lee that he was recording him with his camera.

62. Plaintiff objected to Sergeant Lee's demeanor and informed him that he was fixing the radio, pointing to a note that he previously placed on the windshield of Dino's White Nissan Rogue, parked across the street and opposite Dino's house.

63. Sergeant Lee disregarded the note and pressed to continue with his alleged investigation, alleging that the ignition is messed up.

64. Plaintiff affirmed that the ignition is not messed up and that the car is taken apart, showing his tools are still inside the car.

65. Sergeant Lee asked the Plaintiff if he has paperwork for the car.

66. Plaintiff responded, no.

67. Sergeant Lee then asked where Dino lives and if he's aware of Plaintiff's work on the car.

68. Upon additional inquiry the officers requested verification of the vehicle's owner and the owner's authorization, permitting the Plaintiff's repairs to the car.

69. In cooperation with the officers' request, the owner and authorization to Plaintiff was verified.

70. The Plaintiff informed the officers that their conduct was violating his 14Th Amendment rights.

71. Knowing that they were being filmed, the officers concertedly conducted improper investigations, tampered with evidence, tampered with facts, communicated contradictory statements and concealed exculpatory information to bring malicious, baseless, intentional and retaliatory charges upon the Plaintiff without any probable cause that they were completely aware of, notwithstanding complete and existing real-time video footage for comparison.

72. The officers knowingly engaged in malicious, arbitrary, capricious and retaliatory conduct and abused the Plaintiff's Constitutional rights and intentionally conspired to impede upon the due course of justice with a reckless disregard for the natural or probable consequences of their acts.

73. The officers concertedly acquiesced in falsifying information, filed retaliatory and baseless charges, and encroached upon the Plaintiff's protected First Amendment Rights by omission and verbal admission.

74. Due to the officers' lack of restraint and reckless disregard, the officers concertedly and deliberately falsified charges against Plaintiff upon a criminal court summons, without any probable cause and without any observation of any allegations, notwithstanding that the vehicle owner's authorization to the Plaintiff was verified and confirmed, upon Sergeant Lee's initial inquiry.

75. The officers' conspired and selectively enforced "NYCAC §16-122 (f)" upon summons alleging "Strippor Dismantle Vehicle" as a retaliatory instrument to influence a criminal verdict against the Plaintiff in retaliation for exercising his First Amendment Rights to film the officers.

76. <u>And "NYCAC § 16-122 (a) Legislative Intent states,"</u> *"It is not the intent to prohibit or preclude any person in lawful possession of a vehicle from making lawful repairs or removing any component part for the purpose of making such lawful repairs to a motor vehicle on a public street."*

77. The Plaintiff was in lawful Possession of a vehicle for the purpose of making lawful repairs to it on a public street, 144Th Street and 15Th Avenue, Whitestone, New York, 11357.

78. And It is also on that same public street that police officers Sergeant Lee, Shield # 858, Poo'Leary Shield # 1282 and P.O. Sitirio Shield # 3690 conducted a "Terry Stop" and deliberately falsified allegations and acquiesced in conspiring to produce retaliatory court instruments in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

79. The officers, falsely, intentionally and selectively instituted criminal proceedings, notwithstanding that the Plaintiff was not engaged in any illegal criminal activity or any violation to any law(s) and/or allegations alleged upon the falsified summons, "Strippor Dismantle Vehicle."

80. And at no time did any officer make any such observation.

81. The police officers did not have, establish or witness any probable cause to substantiate allegations and/or summon Plaintiff to Criminal Court.

82. The officers falsely and selectively initiated criminal proceedings, notwithstanding that the officers did verify Dino as the owner of the vehicle, based upon their initial inquiry. And Dino clearly and factually, repeatedly and voluntarily indicated his knowledge of the Plaintiff's work on his car to the officers and upon their questioning.

83. Despite this verified fact the officers recklessly disregarded the truth and selectively enforced and charged Plaintiff with "NYCAC §16-122 (f)," without any justified reason, probable cause and/or substantiating evidence in any way shape or form.

84. The officers motivations to falsify charges emanated from retaliation against Plaintiff's protected exercise of his First Amendment Right to film them.

85. And as a result the Plaintiff was deprived of liberty, and his right to be secure in his person and effects.

86. The officers issued a retaliatory procedural/prosecutorial instrument/summons upon Plaintiff with baseless and unsubstatiated charges.

87. And the selective enforcement and use of "NYCAC §16-122 (f)" was deliberately indifferent purposeful, arbitrary, capricious, and invidiously discriminatory.

88. The officers intentionally and maliciously encroached upon the Plaintiff's due process rights in retaliation for exercising his First Amendment Rights.

89. Plaintiff appeared before the Judge Quinones at the Queens County Criminal Court, Summons Part AR2 on October, 29, 2014, and the adjourned date of December 3, 2014 on his motion to dismiss the alleged charges against him.

90. The Queens Criminal Court allegedly released the Plaintiff on his own recognizance, pending judicial inquiry by Judge Golia. See "Docket # 2014SQ071150, People Of The State of New York vs. Raffi Stepanian."

91. On the adjourned date of January 5, 2015 the Plaintiff accepted an Adjournment in Contemplation of Dismissal before Justice Serita on the Prosecutor's motion for charges that were falsified by the NYPD, City and/or officers Sergeant Lee, Shield # 858, Poo'Leary Shield # 1282 and P.O. Sitirio Shield # 3690.

92. The NYPD/City failed to train and supervise the officers in making "Terry Stops." See PP. 21–22: *"Opinion and Order, Judge Shira A. Scheindlin "08-cv-01034-SAS-HBP, Floyd (SDNY, 2008)) In sum, the test for whether a Terry stop has taken place in the context of a police encounter is whether a reasonable person would have felt free to terminate the encounter. The Second Circuit has further held: "[a] seizure occurs when (1) a person obeys a police officer's order to stop or (2) a person that does not submit to an officer's show of authority is physically restrained."[60]*

### 2. Stops Must Be Based on Reasonable Suspicion
*In order for a Terry stop to comply with the Fourth Amendment, it must be based on a reasonable suspicion that criminal activity "may be afoot."[61] That is, the police may make a Terry stop "when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity."[62] At minimum, " '[t]he officer [making a Terry stop] . . . must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.' "[63] That is, "[p]olice 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion [on a citizen's liberty interest].' "[64] "Reasonable suspicion is an objective standard; hence, the subjective intentions or motives of the officer making the stop are irrelevant."[65]*

[60] *Simmons, 560 F.3d at 105 (citing Swindle, 407 F.3d at 572).*
[61] *Terry, 392 U.S. at 30.*
[62] *United States v. Place, 462 U.S. 696, 702 (1983) (citing Terry, 392 U.S. at 22).*
*Although the Court in Terry did not explicitly refer to crimes that are "about to be" committed, the stop upheld in Terry was based on a police officer's suspicion that two men were about to carry out a "stick-up." Terry, 392 U.S. at 6. It has long been recognized that arrests may be based on probable cause to believe that a crime is about to be committed. The New York stop and frisk statute, New York Criminal Procedure Law ("CPL") § 140.50(1), allows stops when an officer "reasonably suspects that such person is committing, has committed or is about to commit either (a) a felony or (b) a misdemeanor defined in the penal law."*
[63] *Alabama v. White, 496 U.S. 325, 329 (1990) (quoting Sokolow, 490 U.S. at 7) (some quotation marks omitted). Courts are divided over whether reasonable suspicion must be of a particular crime, or may be of criminality in general. See 4 LaFave § 9.5(c).*
[64] *United States v. Elmore, 482 F.3d 172, 178–79 (2d Cir. 2007) (quoting Terry, 392 U.S. at 21).*
[65] *Bayless, 201 F.3d at 133."*

9

93. The Officers' Reasonable Suspicion (if any) was annulled in exactly Four minutes and Fourteen seconds, as Dino returned the keys back to the Plaintiff before the witness of Sergeant Lee.

Failure To Supervise/Failure To Train

94. The Officers used their radios to communicate with the NYPD command operators, upon falsifying charges and their was no on site supervision of the communications alleged or on the side of the NYPD/City Radio Operators to verify the veracity of the allegations communicated. This demonstrates that the NYPD does not have an adequate policy of ensuring the integrity of the information that is conveyed on reports, summonses, and radio communications.

95. This pattern demonstrates that the NYPD Officers and/or Supervisors failed to have proper safeguards in place to verify truth in reporting, verifying facts and application of laws, demonstrating a pattern of deliberate indifference to the need for training, refinement and oversight. *See* PP. 111: *"Opinion and Order, Judge Shira A. Scheindlin "08-cv-01034-SAS-HBP, Floyd SDNY, 2008,* **7. Ongoing Notice of Constitutional Violations:** *"The 1999 AG Report put the NYPD on notice that its stop and frisk practices were resulting in constitutional violations. Despite that notice, senior NYPD officials significantly increased the risk of constitutional violations by applying pressure throughout the chain of command to raise the number of stops without imposing a countervailing pressure to ensure their constitutionality, and without instituting adequate supervisory, monitoring, or disciplinary procedures. This section describes the various ways the NYPD has continued to receive notice since 1999 of widespread constitutional violations in its practice of stop and frisk."*

96. And on October 29Th 2014, the Plaintiff was informed by an individual named "Steve" situated in an office in the Queens County Criminal Court Summons Part AR2 that allegedly "the officers didn't submit a Police Report to the court yet."

97. Unconstitutional acts of the police are known by senior NYPD officials and policy makers. Failures to correct unconstitutional practices with effective preventative measures demonstrates a pattern of deliberate indifference. For example, the information alleged upon summons "4416971303" was in fact submitted to and accepted by the Queens Criminal Court directly through NYPD procedures, without any checks to investigate or substantiate the veracity of the information that was submitted by the NYPD/City.

98. The Plaintiff's video footage compared with the information on the summons demonstrates that the NYPD/City lacks a sound policy of verifying the integrity or veracity of NYPD allegations under color and force of law.

99. Reliance upon the State courts to collect guilty pleas and/or issue ACDs without probable cause is humiliating, demeaning, unconstitutional and unnecessary in light of multiple forms of existing exculpatory information and concurrent facts. The NYPD clearly lacks a training policy to foster honesty and truth in reporting.

100. Lacking a sound policy to insure the integrity of information amounts to a rationalized infringement of the Constitution's objective standards amounting to infringements of the Constitution's guaranteed protections. This pattern of indifference to training policies ultimately leads to repugnant and revolting deprivations of basic fundamental rights with the force of law, which subverts the guaranteed constitutional protections against the infringements.

101. The NYPD/City clearly lacks a policy of training officers to refrain from the unconstitutional conduct that violated the Plaintiff's guaranteed protections. The NYPD lacks a policy to train and educate its officers about the United States Constitution and to conduct themselves within the boundaries of the Constitution.

102. On September 3, 2014 the actions of the Police Officers and NYPD radio operators demonstrated a shared pattern that lacked consideration for the integrity of the communicated information and force of law behind the allegations. False information was created and compounded by a failure to proactively train the officers about the unconstitutionality of their acts.

103. The lack of effective preventive policies and safeguards essentially permits the NYPD to violate established Constitutional protections that are designed to safeguard against such trespasses with the force of authorized law. The NYPD/City clearly lacks effective supervisory policies and training practices to insure against officers engaging in arbitrary, capricious and unconstitutional activities.

104. The lack of proper supervision is reflected through the unconstitutional acts that the officers engaged in on September 3, 2014. If unconstitutional infringements against the innocent were written into policy and law that policy would be unconstitutional and unlawful. However, the lack of proper supervision and training is evident through the acts and edicts of the Police officers instituting de facto polices and procedures that proper training, and effective supervision and monitoring prevents. The allegations written upon summons "4416971303" occurred as a result of the de facto policies, procedures and lacking NYPD foresight that training can foster.

105. Without Plaintiff's unredacted video footage the acquiesced pattern of activity between the Defendant officers, NYPD/City radio operators and Criminal Courts would not be questioned against the edited and redacted summons. Plaintiff's video footage preserved the entire unconstitutional incident. The defendants' unconstitutional motives, acts and practices are apparent.

106. The NYPD/City clearly lacks adequate policies and procedures to insure proper training against arbitrary, capricious, malicious, retaliatory and unconstitutional violations committed by the defendant officers, NYPD/City, cause in fact and proximately.

11

107. Not only is the deficiency in the training of the Defendant officers apparent, but also the deficiency in training policy is exhibited among the radio operators that accepted the communicated exchanges of the officers as fact; Yet the communications between the radio operators and Defendants was unconstitutional in their entirety.

108. There was no preventative measure or procedure in place to safeguard the constitutional requirements that were stealthily abandoned by the officers that was undetected by the NYPD command. The exhibited inability to detect the unconstitutionality of the officers' acts renders the eroding integrity of the NYPD command evident and the unconstitutional acts predictable to recur, should the deficiencies not be corrected effectively and properly. The Plaintiff's film footage demonstrates this, notwithstanding that the NYPD was aware and had constructive knowledge of the unconstitutionality of their acts, allegedly.

109. And at no time did any of the three officers act to prevent the infringements upon the Plaintiff's rights.

110. And at all times herein the officers intentionally and negligently failed to prevent the infringements upon the Plaintiff's rights.

111. And at all times herein the officers conspired to interfere with the Plaintiff's Civil Rights.

112. And at all times herein the officers abused process against the Plaintiff with ulterior motives to gain collateral objective outside of the legitimate ends of legal process.

113. And at all times herein the officers maliciously abused process against the Plaintiff with ulterior motives to gain collateral objective outside of the legitimate ends of legal process.

114. And at all times herein the officers retaliated against the Plaintiff's exercise of his First Amendment rights to free speech and expression protected by the United States Constitution concurrent with a matter existing public concern and established laws.

115. And at all times herein the officers intentionally, willfully, knowingly and recklessly falsified charges motivated by Plaintiff's exercise of his First Amendment rights to free speech and expression protected by the United States Constitution and concurrent with a matter existing public concern and established laws.

116. And at all times herein the officers intentionally, willfully, knowingly and recklessly, detained and/or falsely arrested the plaintiff in violation of the Fourth and Fourteenth Amendments to the United States Constitution, without any probable cause. See Wedderburn v. City of N.Y., No. 00 CIV 4027, 2000 WL 1877100, at *1 (S.D.N.Y. Dec. 27, 2000) (applying Weyant and holding that plaintiff's § 1983 false arrest claim was not barred based upon plaintiff's acceptance of ACD).

117. And at all times herein the officers intentionally, negligently, willfully and maliciously to a reckless disregard for truth continuously acquiesced in libels against the Plaintiff.

118. And at all times herein the officers intentionally, negligently, willfully and maliciously to a reckless disregard for truth continuously acquiesced in slandering the Plaintiff.

119. And at all times herein the officers intentionally, negligently, willfully and to a reckless disregard for truth continuously acquiesced in maliciously defaming the Plaintiff.

120. And at all times herein the officers intentionally, negligently, willfully and maliciously inflicted emotional distress upon the Plaintiff.

121. And at all times herein the officers negligently intentionally, willfully and maliciously inflicted emotional distress upon the Plaintiff.

122. And at all times herein the officers, knowingly, negligently, intentionally and willfully violated the Plaintiff's civil and constitutional rights, depriving him of the equal protection of the laws, and/or equal privileges and immunities under the laws and his First, Fourth, Fifth and Fourteenth Amendment Rights as guaranteed and protected by the United States Constitution and Statutes, cause in fact and proximate.

123. Plaintiff restates and realleges the allegations contained in ¶¶s 1 through 122 above as if fully set forth and incorporates them by reference.

124. By their arbitrary and/or capricious conduct and actions and/or omissions in depriving plaintiff of his freedom to be let alone, to move freely, and to enjoy his property, in maliciously prosecuting him on the basis of false and/or untrustworthy information, in detaining him, in abusing process against him, in retaliating against him for the exercise of constitutionally protected rights, in inflicting emotional distress upon him, in violating his rights to due process and equal protection, and/or for failing to remedy the aforementioned violations after having witnessed them or having been informed of them by report, and defendants chilled and created the risk of chilling conduct protected by the First Amendment, and/or by failing properly to train, supervise, or discipline employees of The City Of New York under their supervision, defendants, acting under color of law and without lawful justification, intentionally, maliciously, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, deprived plaintiff of the equal protection of the laws and/or of equal privileges and immunities under the laws, and thereby caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. § 1983, §§1985(2) & (3) and §1986 and the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

125. All of the aforementioned acts of defendants and their agents, servants, and employees were carried out under color of state law, while defendants were acting in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto, under the supervision of ranking officers of said department, pursuant to the customs, usage, practices, procedures, and the rules of The City and the NYPD, and/or defendants, collectively and individually, engaged in conduct that constituted a custom, usage, practice, procedure or rule of The City and enforced under color of law.

126. As a result of the foregoing, plaintiff was deprived of liberty and property and First Amendment rights, suffered psychological and emotional injury, humiliation, mental anguish and was otherwise damaged.

As a result of the foregoing the Plaintiff is entitled to compensatory damages and is further entitled to punitive damages against Defendants.

WHEREFORE, Plaintiff demands the following relief jointly and severally against all of the Defendants:

A. An order requiring Defendants to return to Plaintiff, or where necessary to expunge and/or destroy all records and other information taken in conjunction with Plaintiff, to remove from all records and databases and information systems maintained by Defendants or their agents or partners any reference to the Plaintiff and to request that all law enforcement agencies and partners that have received such information destroy the same,

B. Judgment in compensatory damages and punitive damages and

C. Other such further relief injunctive and/or special as the Court may deem just and proper.


Raffi Stepanian
15-01 144Th Street
Whitestone, New York
11357

Tel: (718) 747-1030

RESPECTFULLY SUBMITTED,

Dated: 2/16 /2015

14